**2013-1510, -1543**

# United States Court of Appeals
# for the Federal Circuit

IN RE KATZ INTERACTIVE CALL PROCESSING PATENT LITIGATION

-----------------------------------------------------

RONALD A. KATZ TECHNOLOGY LICENSING, L.P.,

*Plaintiff-Appellant,*

*v.*

DHL EXPRESS (USA), INC. and SKY COURIER, INC.,

*Defendants-Cross Appellants,*

*and*

DHL HOLDINGS (USA), INC.,

*Defendant.*

*Appeals from the United States District Court for the Central District of California in Case Nos. 07-CV-2192 and 07-ML-1816, Judge R. Gary Klausner*

### NON-CONFIDENTIAL CROSS-APPELLANTS' PRINCIPAL AND RESPONSIVE BRIEF

Edwin V. Woodsome, Jr.
Christopher S. Ruhland
DECHERT LLP
US Bank Tower
633 West 5th Street, 37th Floor
Los Angeles, CA 90071-2013
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
ed.woodsome@dechert.com
christopher.ruhland@dechert.com

Stephen R. Dartt
DECHERT LLP
300 West 6th Street, Suite 2010
Austin, TX 78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001
stephen.dartt@dechert.com

Daniel B. Epstein
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Phone: (650) 813-4800
Fax: (650) 813-4848
daniel.epstein@dechert.com

*Counsel for Defendants-Cross Appellants*
*DHL Express (USA), Inc. and Sky Courier, Inc.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendants-Cross Appellants DHL Express (USA), Inc. and Sky Courier, Inc. certify the following:

1.      The full names of the parties represented by me are DHL Express (USA), Inc., and Sky Courier, Inc.

2.      The names of the real parties in interest represented by me are DHL Express (USA), Inc., and Sky Courier, Inc.

3.      Sky Courier, Inc. is a subsidiary of DHL Express (USA), Inc.  DHL Express (USA), Inc. is a subsidiary of DPWN Holdings (USA), Inc.  DPWN Holdings (USA), Inc. is a subsidiary of Deutsche Post Beteiligungen Holding GMBH and Deutsche Post AG.  Deutsche Post AG is a company publicly traded in Germany on the DAX.  Deutsche Post AG is not listed on any exchanges in the United States.

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

Before the United States District Court for the Central District of California, DHL Express (USA), Inc. and Sky Courier, Inc. were represented by Christopher S. Ruhland, Edwin V. Woodsome, Jr., Stephen R. Dartt, and Daniel B. Epstein of Dechert LLP; Joshua C. Walsh-Benson (formerly of Dechert LLP), Manroop Purewall (formerly of Dechert LLP); and William A. Molinski and Mark J. Shean of Orrick Herrington & Sutcliffe LLP.

On appeal before this Court, DHL Express (USA), Inc. and Sky Courier, Inc. are represented by Christopher S. Ruhland, Edwin V. Woodsome, Jr., Stephen R. Dartt, and Daniel B. Epstein of Dechert LLP.


This 22nd day of January 2014.          _____/s/ *Daniel B. Epstein*_____
                                                          Daniel B. Epstein

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................ vi

I.  STATEMENT OF RELATED CASES ............................................ 1

II.  STATEMENT OF JURISDICTION ............................................... 2

III.  STATEMENT OF THE ISSUES .................................................. 3

    A.  Katz's Appeal ............................................................... 3

    B.  DHL's Cross-Appeal ..................................................... 3

IV.  STATEMENT OF THE CASE ..................................................... 5

    A.  Proceedings In This Case Through The First Appeal ........... 5

    B.  Post-Appeal Proceedings In The District Court ................. 7

    C.  Katz's Remaining Claims Against DHL Have Been Rejected In Reexamination. ......................................................... 9

V.  STATEMENT OF FACTS ........................................................... 11

    A.  Katz's Patents ............................................................. 11

    B.  DHL's Systems ........................................................... 12

        1.  Brite IVR System. ................................................ 12

        2.  Edify IVR System. ............................................... 13

        3.  The Genesys IVR System. ..................................... 14

    C.  Infringement Issues On Appeal ..................................... 14

VI.  SUMMARY OF THE ARGUMENT ............................................ 15

VII.   ARGUMENT IN RESPONSE TO KATZ'S APPEAL ................................17

A.   Standards Of Review.........................................................................17

B.   The District Court's Collateral Estoppel Ruling Regarding
Claim '120:34 Should Be Affirmed. ....................................................18

C.   The District Court Correctly Granted DHL Summary Judgment
Of Non-Infringement Of Claim 61 Of The '285 Patent......................18

1.   Preparing Data For Storage Is Not The Same As Processing
Data. .............................................................................................20

2.   The Accused DHL Systems Did Not Infringe Because They
Only Stored Data............................................................................23

3.   The District Court Properly Struck Katz's "Look Up"
Infringement Argument Because Katz Failed To Disclose
That Theory In Its Expert Reports. ................................................26

4.   Even If The "Look Up" Were Not Stricken, The Accused
Systems Do Not Infringe Because Searching Is Not Processing...30

D.   The District Court Correctly Granted DHL Summary
Judgment of Non-Infringement of Claim 98 of the '863 Patent.........30

1.   The District Court Did Not Commit Error By Following
This Court's Mandate With Respect To The Construction
of DNIS. ........................................................................................31

2.   The Claim Requires A One-To-One Correspondence
Between The Dialed Number And The Item Accused
Of Satisfying The DNIS Limitation...............................................34

3.   The District Court Correctly Decided Infringement By
Considering Each Accused System As A Whole. ..........................37

4.   Katz Failed To Come Forward With Any Evidence That
The Brite IVR System Received DNIS. .........................................43

5.   In The Alternative, The Court May Affirm The Judgment
Because The Accused Systems Did Not Satisfy The "Caller
Customer Number Data" Limitation Of Claim '863:98. ...............46

      a.   The District Court Ignored Its Own Claim Construction Distinguishing "Personal Identification Data" From "Caller Customer Number Data." ..............................................47

      b.   Katz Did Not Come Forward With Evidence That The Accused Systems Satisfy The Caller Customer Number Data Limitation. .........................................................................50

E.   The Court Correctly Granted Summary Judgment Of Non-Infringement For Claim 19 Of The '551 Patent.................................51

    1.   DHL Moved For Summary Judgment Of Non-Infringement Of Claim '551:19 By The Edify IVR System.................................52

    2.   Katz Has Not Come Forward With Any Evidence That The Edify IVR System Infringed Claim '551:19...........................53

VIII.  DHL'S CROSS-APPEAL ARGUMENTS ...................................................56

A.   The District Court Should Have Granted DHL Summary Judgment That Collateral Estoppel Precludes Katz From Asserting Claim '285:61. ......................................................................56

B.   The District Court Erred in Construing "Processing." ........................59

    1.   "Processing" Should Not Be Construed Alone, In Place Of The Recited Function.............................................................60

    2.   This Court Has Consistently Held That Similar Claims Require The Disclosure Of An Algorithm.....................................62

    3.   The Function For The "Means For Processing" Limitation In Claim '863:98 Requires Identifying A Different Subgroup Of Callers And Different Sets Of Answer Data Signals. ...................64

    4.   The Function For The "Analysis Structure" Element Of Claim '551:19 Requires A Determination Of Which Data Is To Be Processed. ........................................................................65

    5.   The Function For The "Means For Processing" In Claim '285:61 Requires An Order In Which Multiple Caller Information Data Entries Are Processed........................................66

IX.    CONCLUSION .............................................................................................67

CERTIFICATE OF SERVICE ................................................................................69

CERTIFICATE OF COMPLIANCE ........................................................................71

## **CONFIDENTIAL MATERIAL OMITTED**

The material redacted from this brief is subject to a protective order. The confidential information on pages 12-14, 23-26, 30, 42-45, 50-51, and 54-55, relates to DHL's confidential technical information, as well as documents and testimony regarding the confidential technical information, which have been designated as confidential.

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006) ...................................................................49

*Aristocrat Techs. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008) ...................................................... 6, 59, 66

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
    709 F.3d 1348 (Fed. Cir. 2013) ...................................................................22

*Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009) .....................................................................41

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
    616 F.3d 1249 (Fed. Cir. 2010) ...................................................................66

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
    402 U.S. 313 (1971) .....................................................................................57

*Campbell v. United States*,
    592 F.2d 309 (6th Cir. 1979) .......................................................................33

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .....................................................................................17

*Chicago Bd. Options Exchange, Inc. v. Int'l Securities Exchange, LLC*,
    677 F.3d 1361 (Fed. Cir. 2012) ...................................................................23

*Coleman v. Calderon*,
    210 F.3d 1047 (9th Cir. 2000) .....................................................................33

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) (en banc) ...................................................17

*Encyclopaedia Britannica, Inc. v. Alpine Elecs., Inc.*,
    355 F. App'x 389 (Fed. Cir. 2009)...................................................... 63, 66, 67

vi

*Ergo Licensing LLC v. Carefusion 303, Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012) ...................................................... 62, 63, 65, 66

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc.*
  *v. Mega Systems, LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) ...........................................................43

*Fresenius USA, Inc. v. Baxter*,
   721 F.3d 1330 (Fed. Cir. 2013) ...........................................................18

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990) ...........................................................40

*In re Katz Interactive Call Processing Patent Litigation*,
  639 F.3d 1303 (Fed. Cir. 2011) ................................................... passim

*In re Ronald A. Katz Tech. Licensing, L.P.*,
  No. 2013-1139 (Fed. Cir. Nov. 7, 2013) ......................................... 9, 18

*In re Ronald A. Katz Technology Licensing, L.P.*,
  No. 2013-1137 (Fed. Cir. Nov. 7, 2013) ............................... 10, 57, 58

*Katz v. AT&T Corp.*,
  63 F.Supp.2d 583 (E.D. Pa. 1999)...........................................................20

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
  453 F.3d 1364 (Fed. Cir. 2006), ...........................................................42

*Littlejohn v. United States*,
  321 F.3d 915 (9th Cir. 2003) ...........................................................57

*Mendenhall v. Barber-Greene Co.*,
  26 F.3d 1573 (Fed. Cir. 1994) ...........................................................57

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) ...........................................................21

*Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*,
  520 F.3 1367 (Fed. Cir. 2008) ...........................................................41

*Nike Inc. v. Wolverine World Wide, Inc.*,
  43 F.3d 644 (Fed. Cir. 1994) ...........................................................18

vii

*Novartis Pharmaceuticals Corp. v. Abbott Laboratories*,
  375 F.3d 1328 (Fed. Cir. 2004) ........................................................57

*Portsmouth Square, Inc. v. Shareholders Protective Comm.*,
  770 F.2d 866 (9th Cir. 1985) ...........................................................53

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008) ........................................................................42

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*,
  731 F.3d 840 (Fed. Cir. 1984) ........................................................56

*Rembrandt Vision Techs., Inc. v. Johnson & Johnson Vision Care, Inc.*,
  725 F.3d 1377 (Fed. Cir. 2013) ......................................................26

*Resolution Trust Corp. v. Keating*,
  186 F.3d 1110 (9th Cir. 1999) .........................................................58

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*,
  903 F.2d 789 (Fed. Cir. 1990) ........................................................31

*United States v. Gargotto*,
  510 F.2d 409 (6th Cir. 1974) ...........................................................33

*USHIP Intellectual Properties, LLC v. United States*,
  98 Fed. Cl. 396 (Fed. Cl. 2011) ......................................................62

*Verizon California Inc. v. Katz*,
  326 F. Supp. 2d 1060 (C.D. Cal. 2003) ..........................................20

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .........................................................26

## Statutes

28 U.S.C. § 1331 ...................................................................................2

28 U.S.C. § 1338 ...................................................................................2

35 U.S.C. § 112 .............................................................................. *passim*

35 U.S.C. § 307(a) .............................................................................18

**Rules**

Fed. R. Civ. P. 26(a)(2) ...................................................................... 27, 29

Fed. R. Civ. P. 37(c)(1) ...................................................................... 27, 29

Fed. R. Civ. P. 40 ...................................................................................33

Fed. R. Civ. P. 56(c) ...............................................................................17

## I.   **STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5, counsel for Cross-Appellants DHL Express (USA), Inc. and Sky Courier, Inc. states:

(a) There have been other appeals in or from this same civil action or proceeding in the district court before this Court, consolidated as *In re Katz Interactive Call Processing Patent Litigation*, Appeal Nos. 2009-1450, -1451, -1452, -1466, -1467, -1458, -1469, and 2010-1017, -1036.  Judges Newman, Lourie, and Bryson issued an opinion in the consolidated case on February 18, 2011, reported at *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303 (Fed. Cir. 2011) ("*Katz I*").  Another related appeal, *Ronald A. Katz Technology Licensing, L.P. v. General Motors*, Nos. 2009-1407, -1408, was stayed and subsequently dismissed on May 6, 2013.

(b) There are a number of additional related cases that were transferred by the Joint Panel on Multidistrict Litigation for coordinated proceedings in the district court, listed by title and number in Katz's opening brief, that may be directly affected by this Court's decision in the pending appeal.

## II.  STATEMENT OF JURISDICTION

The district court had jurisdiction over the patent infringement suit filed by Ronald A. Katz Technology Licensing, L.P. ("Katz") under 28 U.S.C. §§ 1331 and 1338.  On July 12, 2013, Katz appealed from the district court's final judgment in favor of DHL Express (USA), Inc., and Sky Courier, Inc. (collectively "DHL"). (Joint Appendix ("JA") JA37-38.)  DHL timely filed its cross-appeal from that final judgment and the underlying orders on July 26, 2013.

## III.   STATEMENT OF THE ISSUES

### A.   Katz's Appeal

Whether the Court should affirm the district court's grant of summary judgment that:

1.     Katz is collaterally estopped from asserting claim 34 of United States Patent No. 5,974,120;

2.     DHL's accused Brite IVR system and Edify IVR system did not infringe claim 61 of United States Patent No. 5,352,285;

3.     DHL's accused Brite IVR system and Edify IVR system did not infringe claim 98 of United States Patent No. 5,684,863; and

4.     DHL's accused Brite IVR system and Edify IVR system did not infringe claim 19 of United States Patent No. 5,815,551.

Whether the district court's claim construction rulings underlying the grant of summary judgment were proper.

### B.   DHL's Cross-Appeal

Should the Court grant any relief requested by Katz and vacate or reverse any portion of the district court's summary judgment ruling, DHL respectfully requests that the Court consider the following cross-appeal issues:

1.    Whether the district court erred in refusing to find that Katz is collaterally estopped from asserting claim 61 of the '285 patent.

2.    Whether the district court erred in its construction of "processing" in the means-plus-function elements of claim 61 of the '285 patent, claim 98 of the '863 patent, and claim 19 of the '551 patent.

IV.  **STATEMENT OF THE CASE**

A.  **Proceedings In This Case Through The First Appeal**

Katz sued DHL in the United States District Court for the District of Delaware in September 2006.  (JA2542; JA1921; *see* JA9170-71.)  In March, 2007, that lawsuit was consolidated in an MDL proceeding in the Central District of California with similar lawsuits Katz filed against other defendants.  (JA2544-45; JA3915-16.)

On February 21, 2008, the court construed 30 claim terms ("Original Claim Construction Order").  (JA58-114.)  That claim construction order construed DNIS to mean (1) "DNIS [referring to signals]" means "signals that identify the number called," and (2) "DNIS [referring to data]" means "data that identify the number called."

On May 2, 2008, Katz's infringement expert John Kelly served his expert report.  On May 16, 2008, after the deadline for serving expert reports, Dr. Kelly served an amended expert report.  In neither expert report did Katz advance an infringement theory that telephone operators satisfied the "means for processing" limitation of claim 54 of the '285 patent by entering caller information and tracking numbers at terminals to look up caller account information and tracking information.

In ruling on the parties' summary judgment motions, the district court held that the sixteen claims asserted against DHL were invalid. With regard to the claims presently before this Court on this appeal, the district court held, in an order filed on June 19, 2008, that claims '551:19 and '863:98 were indefinite and therefore invalid under Section 112. (JA127-91.) Claim '120:34 was held invalid for a lack of written description. (*Id.*) The district court held that claim '285:61 was invalid as indefinite for failing to disclose an algorithm as required by *WMS Gaming* and *Aristocrat*. (JA243-75.) Final judgment for DHL was entered on May 27, 2009. (JA37-38.)

Katz appealed the Original Claim Construction Order and the summary judgment orders on June 22, 2009. (JA64088-90.) In its brief on appeal, Katz did not challenge the district court's construction of DNIS, and therefore waived any argument that the district court's construction was incorrect. (*See* JA64847-49 (identifying claim construction issues on appeal).)

On February 18, 2011, this Court ruled in DHL's favor regarding Katz's appeal of 12 of the 16 claims asserted against DHL. *Katz I*, 639 F.3d at 1315. This Court reversed the district court's findings of indefiniteness of claims '551:19, '863:98, and '285:61. *Id.* at 1316. The Court also reversed the district court's finding of a lack of written description for claim '120:34. *Id.* at 1321.

6

The Court directed further consideration of certain claim construction issues applicable to certain claims that the district court had previously ruled invalid under Section 112. Specifically, the district court was required to consider claim construction of "processing." *Id.* at 1317.

The Court also directed the district court to clarify its construction of DNIS, because "[t]he district court's brief discussion of the DNIS issue leaves it unclear whether the court's construction of the DNIS limitation requires that the accused system use the full ten-digit called telephone number or merely some other representation that uniquely identifies the called number." *Id.* at 1326.

### B. <u>Post-Appeal Proceedings In The District Court</u>

After this Court's *Katz I* opinion, there were four remaining claims asserted against DHL: claim 98 of the '863 patent, claim 19 of the '551 patent, claim 61 of the '285 patent, and claim 34 of the '120 patent.

On remand, the district court clarified the construction of the claim term "DNIS"— using this Court's guidance in *Katz I*. (JA33.1-33.12.) The district court clarified its definition as follows: "DNIS refers to signals or data that uniquely identify the number called. DNIS is not limited to the full ten-digit number." (JA33.8.) The district court also construed the "processing" function for claims '551:19, '863:98, and for the '285 patent. (JA33.5-33.6.)

The district court permitted DHL to file another summary judgment motion relating to the four remaining asserted claims. (JA65466-68.) DHL's summary judgment motion contained non-infringement arguments for all remaining claims asserted against DHL. (JA70600-29.) DHL's motion also contained §102 and §103 invalidity arguments for claims '285:61 and '120:34. DHL's motion also contained collateral estoppel arguments for claims '285:61 and '120:34.

On June 12, 2013, the district court granted in part and denied in part DHL's motion. (JA1-23.) Specifically, the district court entered summary judgment for DHL regarding:

- Non-infringement of the "means for processing…" limitation of claim 61 of the '285 patent by the accused Brite and Edify Interactive Voice Response ("IVR") Systems (JA7-8);

- Non-infringement of the "DNIS" and "pin-number data based upon limited use" limitations of claim 34 of the '120 patent by the accused Brite and Genesys IVR Systems (JA11-12,14-15);

- Non-infringement of the "DNIS" limitation of claim 98 of the '863 patent by the accused Brite IVR System (JA16);

- Non-infringement of the "DNIS" limitation of claim 19 of the '551 patent by the accused Brite and Edify IVR Systems (JA18); and

- Collateral estoppel for claim '120:34 (JA3-4).

8

The district court also denied summary judgment on other non-infringement defenses asserted by DHL, including DHL's argument that it does not infringe claim 98 of the '863 patent because a caller's telephone number cannot be caller customer number data. (JA17-18.)

Because the district court's order disposed of all four remaining claims, the court entered final judgment in favor of DHL. (JA33.13-14.)

### C.   Katz's Remaining Claims Against DHL Have Been Rejected In Reexamination.

All of Katz's asserted claims relevant to this appeal have been rejected in reexamination, and the invalidity of claim '120:34 has been affirmed by this Court.

Claim 34 of the '120 patent was rejected by the PTO in a final office action dated March 20, 2009, as obvious in light of Calabrese and Periphonics. Katz appealed the Examiner's rejection, and the Board affirmed. Katz appealed the ruling to this Court, and on November 7, 2013, this Court affirmed the Board's decision. *In re Ronald A. Katz Tech. Licensing, L.P.*, 2013-1139 (Fed. Cir. Nov. 7, 2013).

Claim 61 of the '285 patent was also rejected by the PTO in Reexamination No. 90/012,578. In an office action dated August 15, 2013, the Examiner rejected claim 61 as obvious in view of multiple combinations of five prior art references. Katz has requested reconsideration of the rejection. In addition, claim 54 of the '285 patent, from which claim 61 depends, was rejected by the PTO in the final

office action of a reexamination dated March 20, 2009, finding it invalid as being

anticipated by Barger and as being obvious in light of Barger and VCT '86. Katz

appealed the Examiner's rejection of claim 54 of the '285 patent to the Board, and

the Board affirmed the obviousness rejection on June 6, 2011. Katz appealed the

ruling to this Court, and on November 7, 2013, this Court affirmed the Board's

decision. *In re Ronald A. Katz Tech. Licensing, L.P.*, 2013-1137 (Fed. Cir. Nov. 7,

2013).

    Claim 98 of the '863 patent, and claim 96, from which claim 98 depends,

were both rejected as obvious over several combinations of seven prior art

references, in Reexamination No. 90/012,071. The PTO issued an office action on

April 13, 2013, and Katz requested reconsideration on June 25, 2013.

    Finally, claim 19 of the '551 patent, and claim 18, from which claim 19

depends, were rejected by the PTO in Reexamination No. 90/012,036. The PTO

issued a final office action on April 13, 2013, rejecting claim 19 as obvious based

on multiple combinations of four prior art references. Katz appealed the rejection

to the Board. The Examiner submitted an Answer in December 2013, and the

appeal is now fully briefed.

## V.    STATEMENT OF FACTS

### A.    Katz's Patents

The technology described throughout Katz's expired patents (the remaining patents in suit expired over eight years ago) represents a structure of an older, simpler, and outdated call center system.

U.S. Patent Nos. 5,684,863 ("the '863 patent") and 5,815,551 ("the '551 patent") are analysis control or "Statistical Interface" patents.  These analysis control patents as described by Katz are primarily intended for the collection and analysis of polls and caller surveys – something that DHL does not do.  The specific function of these patents includes the comparison and analysis of incoming calls with collected statistics and characteristics of previous calls, as would be expected in a system polling or surveying callers.  The function and intention of these patents are strikingly different than the function of a shipping company call center that provides access to functions for drop off, pickup, and package tracking.

U.S. Patent No. 5,352,285 ("the '285 patent") is a "conditional interface plus" patent.  This patent covers "a telephonic-computer interface system" that can handle a large number of calls and direct them either to live-operator stations or to computer-operated stations.  (JA417 at 2:3-8.)  The '285 patent is directed to call systems to be used for games, contests, lotteries, or polls.  (JA418 at 3:39-42.)  Once again, DHL does not offer these or comparable services.  Instead, DHL

11

operates a call center that customers can use to track packages, schedule the pick-up of packages, and access related services.

The '863, '551, and '285 patents had an expiration date of December 20, 2005.  U.S. Patent No. 5,974,120 ("the '120 patent"), which is now moot as result of this Court's decision on reexamination, expired on December 31, 2009.

### B. **DHL's Systems**

#### 1. **Brite IVR System.**

The Brite system was used by ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ (JA70176 ¶31.)

All calls in the Brite system were received by ████████████████ processes and routs the calls within the public switched telephone network ("PSTN") (also known as pre-routing).  (JA68097 at 115:15-116:16.)

Katz's description of DHL's Brite system is not entirely correct.  ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ (JA70178 ¶43-46; JA75628-29 ¶61; JA68141-171; JA71975-2026; JA70920-31.)  The VDN code assignments were defined by Airborne and did not directly correspond (one-to-

one) with the original DNIS. *Id.* The VDN codes included criteria in addition to the information provided by the original DNIS. *Id.* There were many instances where a single called number would map to more than one VDN. For example, █████ ████████████████████████████████████████████████████ (*See, e.g.,* JA70922; JA70928.)

████████████████████████████████████████████

████████████████████████████ (JA70179 at ¶47-48; JA68141-171.) ████

██████████████████████████████████████████

████████████████████████ *Id.*

If the caller chose to speak directly with an agent, the call was routed to an agent queue and would eventually be connected with an agent. If the caller chose one of the common applications such as ████████████████████████

████████████████████████████████████ (JA70181-2 ¶56; JA68141-171.)

### 2. Edify IVR System.

The Edify system was used by DHL ████████████████████████ (JA70186 ¶80.)

The Edify call centers contained ████████████████████████████

████████████



All customer service calls were received by  (JA70187-8 ¶¶84-87.)

Similar to the Brite system,

(JA70185-86 ¶¶68, 78; *see also* JA75667-68 ¶¶220-226.)  The DNIS was not

passed to the Edify IVR system component.

### 3.    The Genesys IVR System.

DHL implemented the Genesys                                    Of the

remaining claims asserted against DHL, Katz only asserted that the '120:34 claim

was infringed by the Genesys system.  Because the '120:34 claim has been

affirmed as invalid by this Court, that claim is now moot, and the Genesys system

has no bearing on this appeal.

### C.    <u>Infringement Issues On Appeal</u>

Katz includes an "Infringement Issues on Appeal" section, as a subsection of

their Statement of Facts.  In this section, Katz presents an argument about why

DHL's systems allegedly infringe the asserted claims of Katz's patents.  DHL

disputes Katz's assertions in this section and will address Katz's specific

arguments in the Argument section below.

## VI.   **SUMMARY OF THE ARGUMENT**

The Court should affirm the district court's order granting summary judgment of non-infringement to DHL as to all of Katz's remaining asserted claims.

First, because of this Court's decision affirming the Board's rejection of claim 34 of the '120 patent, Katz is collaterally estopped from asserting the validity of that claim, and there is no need to consider the merits of Katz's arguments regarding that claim.

Second, the district court correctly granted summary judgment of non-infringement of claim '285:61 because Katz failed to come forward with any evidence that DHL's Edify IVR system and Brite IVR system included a "means for processing" as required by the claim. The district court properly rejected Katz's attempt to conflate "storing" and "processing."

Third, the district court correctly granted summary judgment of non-infringement of claim '863:98 because the accused systems do not receive DNIS. In clarifying its construction of the term DNIS, the district court followed this Court's explicit instructions on remand from *Katz I*. The district court cannot have committed error in doing so. On appeal, Katz is not challenging the district court's construction so much as it is challenging the ruling in *Katz I*. The time for that challenge has passed. Katz failed to identify any evidence supporting its

infringement theory under the district court's proper construction of DNIS, and the grant of summary judgment was proper. Alternatively, the Court should affirm the district court's judgment because Katz failed to identify any evidence that the accused systems satisfy the "caller customer number data" limitation of claim '863:98.

Fourth, the district court correctly granted summary judgment of non-infringement of claim '551:19 because the accused systems do not receive DNIS.

If the Court affirms the district court's judgment in all regards, it need not reach the issues raised in DHL's cross-appeal. However, should the Court agree with Katz and reverse any portion of the district court's ruling, DHL respectfully urges the Court to vacate the district court's claim construction and denial of summary judgment based on the following legal errors.

First, the district court should have held that Katz was precluded from asserting the validity of claim '285:61 under the doctrine of collateral estoppel. This Court recently affirmed the Board's rejection of claim '285:54, from which claim '285:61 depends. Following this Court's decision with respect to claim '285:54, Katz should be estopped from asserting that the prior art does not disclose the elements of claim 54, or that there was not a motivation to combine the prior art references in the context of claim 61.

Second, the district court erred in its construction of "processing" in the means-plus-function elements of claims '285:61, '863:98, and '551:19. For each claim, the district court improperly construed the term "processing" to have its plain and ordinary meaning, and held that it was unnecessary to disclose an algorithm for functions performed by general purpose computers. This erroneous ruling foreclosed DHL's invalidity arguments under 35 U.S.C. § 112 and should be reversed.

## VII.  ARGUMENT IN RESPONSE TO KATZ'S APPEAL

### A.  Standards Of Review

The issue of claim construction is a question of law reviewed *de novo* on appeal. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

Summary judgment is appropriate, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 mandates entry of judgment where a party fails to make a sufficient showing on an essential element of its case with respect to which it bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court applies the same legal standard as that applied by the trial court in determining whether summary

judgment was appropriate. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994).

**B.      The District Court's Collateral Estoppel Ruling Regarding Claim '120:34 Should Be Affirmed.**

This Court recently affirmed a decision by the Patent Trial and Appeal Board holding claim 34 of the '120 patent invalid. *See In re Ronald A. Katz Technology Licensing, L.P.*, No. 2013-1139 (Fed. Cir. Nov. 7, 2013).  Katz conceded that if this Court affirmed the Board in Appeal No. 13-1139, the district court's collateral estoppel ruling would be correct.  (Katz Br. at 56.)  The time for Katz to file a petition for panel rehearing or rehearing en banc expired, and, on December 30, 2013, the Court issued its formal mandate pursuant to Federal Rule of Appellate Procedure 41(a).  Claim 34 will therefore be cancelled. *See* 35 U.S.C. § 307(a).  Katz is estopped from asserting the validity of claim 34, and Katz's claim construction and infringement arguments related to that claim are moot. *See Fresenius USA, Inc. v. Baxter*, 721 F.3d 1330, 1339-40 (Fed. Cir. 2013) (where patent claim is cancelled in reexamination proceedings due to invalidity, "the patentee's cause of action is extinguished and the suit fails").

**C.      The District Court Correctly Granted DHL Summary Judgment Of Non-Infringement Of Claim 61 Of The '285 Patent.**

Claim 61 of the '285 patent is dependent on independent claim 54.  The relevant portions of claim 54 are:

> 54. An interface control system … said interface control system comprising: …
>
> means for processing coupled to said forwarding means for processing caller information data entered by an operator at said live operator attended terminal;
>
> means for storing coupled to said processing means for storing certain select data from said caller information data entered by said operator;

(JA428.)

The parties agree that "means for processing" is a means-plus-function element, and the function associated with this element is "processing caller information data entered by an operator at said live operator attended terminal." (JA61419, JA70203 ¶140.)

The district court granted summary judgment of non-infringement to DHL because the accused systems do not include a means for processing, as required by the claim. Katz relied on DHL's live operators storing data to satisfy the claim limitation, but the district court rejected Katz's position, holding that "receiving data entered by an operator and preparing it for storage does not satisfy the 'means for processing . . . for processing caller information data entered by an operator at said live operator attended terminal' limitation." (JA9.) For the reasons set forth below, the district court's ruling was correct.

### 1.    Preparing Data For Storage Is Not The Same As Processing Data.

The accused systems store data, but do not manipulate it.  "Processing" within the meaning of claim 61 requires more than merely storing data, so the accused systems do not infringe.

Katz conflates processing and storing, but this ignores the construction of "processing."  In their expert reports, the parties agreed that the term "processing" meant "manipulation of data which performs some operation or sequence of operations on the data."  (JA61377 (Katz's expert Dr. Kelly referring reference number [6] to denote this construction for processing); JA67724, JA67730 (Kelly using reference number [6] to refer to the term "processing" for claim 54 of the '285 patent); JA70204 ¶145 (DHL's expert accepting this construction of processing); JA75752 ¶83 (Katz stating it is "undisputed" that both experts agreed that the construction of processing is "manipulation of data which performs some operation or sequence of operations on the data").).)[1]

_____

[1] The term "processing" has been construed in multiple cases to be the same construction that Katz's expert used in his infringement expert report. "Processing" was first construed in 1999 in a case against AT&T.  *Katz v. AT&T Corp.*, 63 F.Supp.2d 583, 611 (E.D. Pa. 1999).  There, the court construed processing, using the '285 patent for additional context, as "manipulation of data which performs some operation or sequence of operations on the data."  In addition, in a 2003 Markman order in a case against Verizon, the court again construed processing with the same construction.  *Verizon California Inc. v. Katz*, 326 F. Supp. 2d 1060, 1075, 1083 (C.D. Cal. 2003).  In this case, the district court addressed the meaning of "processing" after the initial appeal and reached the

The district court was correct when it found that the '285 patent did not intend to refer to storing data when it used the term "processing." (JA8.) Storing data does not "manipulate" data. To the contrary, the objective of storing data is to preserve the data without altering it. Moreover, under Katz's theory, either the processing limitation or the storing limitation would be rendered meaningless, because every time there is storing, there would also be processing. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

The '285 patent makes clear that storing is a separate operation than processing. Claim 61, through dependency on claim 54, requires a "means for storing" caller information data that is "coupled to"—*i.e.*, distinct from—the "means for processing" caller information data. (JA428 at 24:41-47.) The district court was correct that the '285 patent specification refers to storage and processing of data as separate operations. (JA8; *see also, e.g.*, JA417 at 2:37-38 ("Data is

---

conclusion that "'processing' [is] to have its plain meaning in the context of the '285 patent." (JA65949.) The district court construed the term processing after this Court remanded the case back to the district court in part, for a determination of whether the functions in the means for "processing" required the disclosure of algorithms. *Katz I*, 639 F.3d at 1317. However, there is no dispute by the experts in this case that the ordinary meaning of processing as understood by a person of skill in the art is "manipulation of data which performs some operation or sequence of operations on the data."

recorded and processing procedures also may be controlled by call data."); JA420 at 8:47-49 ("the call data is registered to be amenable for processing operations").)

The '285 patent specification further states that a system for "processing" digital data is shown in another Katz patent, U.S. Patent No. 4,792,968. (*See* JA417 at 1:46-57.) The '968 patent distinguishes between "processing" and mere storage, with "processing" referring to true manipulations of data, such as subjecting data to mathematical or logical operations in order to perform statistical analysis on the data. (*See, e.g.*, JA335 at Abstract ("digital data . . . is stored for processing"; "[t]he stored data is statistically processed and correlated"); JA340 at 2:62-68; JA341 at 3:62-4:6 (describing a "data acquisition phase" during which data is "stored," followed by a "processing phase" during which "the computer 22 processes the stored data").)

The Court addressed a similar issue in *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.,* 709 F.3d 1348, 1357 (Fed. Cir. 2013). The Court affirmed summary judgment of non-infringement, ruling that the accused infringer's internal testing of its gaming system did not infringe the claimed method because the testing did not "award" a prize as recited in the claim, and therefore did not perform every step of the claimed method. The Court rejected the patentee's argument that merely displaying an amount of a prize was the same as awarding a prize because a second limitation required notifying the player of the won prize,

*Confidential Material Redacted*

and therefore "awarding" a prize had to be more than just identifying a prize. *Id.*;

*see Chicago Bd. Options Exchange, Inc. v. Int'l Securities Exchange, LLC,* 677

F.3d 1361, 1370-71 (Fed. Cir. 2012) (ruling that "matching" could not mean

"allocating" since "matching" was used as an additional limitation to allocating in

a dependent claim).  Similarly, here, processing has to be more than merely

storing, as the district court correctly held.

> **2.  The Accused DHL Systems Did Not Infringe Because They Only Stored Data.**

Katz failed to come forward with any evidence that the Brite or Edify

systems met this claim limitation by processing data, separate from storing it.

Katz argues that the "district court acknowledged that Katz adduced

evidence showing that agents ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████  (Katz. Br. at 36.)  However,

the district court did nothing of the kind.  Rather, the district court merely repeated

Katz's position by noting that "Katz says that receiving data entered by an operator

and preparing it for storage in a database involves substantial amounts of

processing as the data moves through the various software layers."  (JA8.)  The

district court then rejected Katz's view and held that "receiving data entered by an

operator and preparing it for storage does not satisfy the 'means for processing . . .'

limitation." (JA9.)

In its expert report, with regard to the Brite system, Katz only cites to evidence that data entered by an operator was stored, not processed.  (JA67724-5.) The evidence merely shows that the exact data entered by the operators was stored in a database for later retrieval.  To get around the fact that no processing occurred, Katz tries to invent processing by saying that receiving data entered by an operator and preparing it for storage in a database involved substantial amounts of processing as the data moved through the various software layers.  (JA75752-3.)

In his report, Katz's expert asserts that ████████████████████

██████████████████████████████████████████████████

██████  (JA67725.)  Kelly claims that this information "was processed by the

████████████████████████████████████████  *Id.*[2]

However, the caller information data entered by the operator was not "processed" by the Brite system.  When a caller to the Brite IVR system heard an automated voice message state the caller's telephone number or closing time, ██████████████

██████████████████████████████████████████████████

----

[2] In his expert report, the only evidence Dr. Kelly cites for support of this assertion is one page from a deposition exhibit and authenticating deposition testimony. (JA67725, citing to JA71237 and JA71043-5 at 120:22-122:3 ██████████████████████

████████████████████████████████████  *JA71043-4 at 120:22-121:2.)*

The cited deposition testimony does not discuss ██████████████████  It merely states that when an operator first saw ██████████████████████████████████  (JA71044-5 at 121:3-122:3.)

████████████████████████████████ The data had not been

manipulated or subjected to operations of any kind, and it therefore was not

"processed data" within the meaning of 285:61.  (JA70204 ¶147; JA68240 at

147:24-148:25.)

In addition, with regard to the Edify system, Katz also only cites to

evidence that data entered by an operator is stored, not processed.  (JA67730-32.)

The evidence shows that the caller information data entered by the operator is not

"processed" by the Edify system.  In Edify, ████████████████████████

████████████████████████████████████████

████████████████████████████ (JA67855 at 35:8-13

████████████████████████████████████████

██████ JA67855 at 35:19–36:20.)  The data has not been manipulated or subjected

to operations of any kind, and therefore it is not "processed data" within the

meaning of '285:61.[3]

---

[3] In its brief, Katz cites voluminous portions of the record relating to processing.
However, in each case, the cited materials are simply a reference to Dr. Kelly's
declaration, followed by a citation to materials on which Kelly relies, with no
further explanation or analysis.  For example, Katz cites to the Kelly's declaration
and to the materials on which Kelly relied, in nearly every portion of its discussion
of processing.  (*See, e.g.* Katz Br. at 36 (citing JA75620-21 ¶¶ 15-23), 36 (citing
JA75623 ¶ 37), 37 (citing JA75625-26 ¶ 52), 37 (citing JA75623 ¶ 38).)  The first
set of citations merely discuss the general operation of the DHL Brite system,
some of which pertain to evidence regarding an infringement theory that the
district court struck.  The second set of citations merely show ████████████
████████████████████████████████

*Confidential Material Redacted*

### 3. The District Court Properly Struck Katz's "Look Up" Infringement Argument Because Katz Failed To Disclose That Theory In Its Expert Reports.

The district court struck the portion of Katz's opposition that argued that the "processing means" limitation was satisfied when a customer service representative looks up a caller's information. (JA8.) The court held that Katz never disclosed its "look up" operation infringement theory until the declaration Dr. Kelly submitted in opposition to DHL's summary judgment motion. The court reviewed Katz's expert's report showing that this theory was not present in either the body of the report (JA67651-2) or the accompanying claim chart (JA 67724-5).

The Court follows the law of the regional circuit when reviewing a district court's exclusion of evidence. *Rembrandt Vision Techs., Inc. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1380 (Fed. Cir. 2013). In the Ninth Circuit, the exclusion of evidence is reviewed for an abuse of discretion. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001).

_____

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The third set of citations discloses Katz's contention that the structure for the processor means of the Edify system ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The fourth set of citations discusses that ▮▮▮▮▮▮▮▮▮▮▮ Katz repeats this pattern – citing Kelly, and then citing the same materials on which he relies, with no further analysis – throughout its brief. (*See, e.g.*, Katz Br. at 36-37.) Katz cannot satisfy its burden on appeal and establish that the district court overlooked material factual disputes simply by citing the record in bulk and asking the Court and DHL to parse out the purportedly relevant items.

Katz's infringement expert report was due on May 2, 2008.  Rule 26

required Katz to disclose its contentions during discovery, and it also required that

Katz's expert reports "contain . . . a complete statement of all opinions the witness

will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2).  A party

cannot rely on undisclosed evidence or expert opinions at summary judgment

unless the party can persuade the district court that its failure to disclose was

"substantially justified" or "harmless."  Fed. R. Civ. P. 37(c)(1).[4]  The district

court applied this standard uniformly to all parties, including DHL.[5]

---

[4] Katz moved to strike numerous arguments made by DHL on the ground that those arguments were not disclosed in DHL's expert report.  For example, Katz moved to strike opinions by Dr. Prieve regarding this '285:61 claim, as well as claim '120:34 by making the following argument:

"Rule 26 required that DHL disclose its contentions during discovery, and also required that DHL's expert reports 'must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them.' Fed. R. Civ. P. 26(a)(2).  Where DHL relies on untimely new opinions and contentions, DHL is 'not allowed to use that information or witness' at summary judgment unless DHL shows that its failure was 'substantially justified' or 'harmless.' Fed. R. Civ. P. 37(c)(1)."  (JA73406.)

[5] For example, the district court struck DHL's means-plus-function analysis provided in DHL expert Dr. Prieve's declaration:

"If this Court allowed the numerous defendants to repeatedly supplement their contentions without any justification, these cases would never see trial.  That would clearly prejudice Katz.  Accordingly, this Court STRIKES those parts of DHL's summary judgment motion and Dr. Prieve's declaration that include new means-plus-function analysis."  (JA30.)

The district court was correct when it noted that Katz's expert Dr. Kelly did not disclose a "look up" infringement theory in either the body of his expert report (JA67651-2) or his accompanying claim chart (JA67724-5). In the accompanying claim chart, the only theory Katz disclosed as to how the limitation was met was through an agent using a workstation to update the caller information.

Katz's arguments on appeal do not address the question of whether it disclosed the theory in its expert reports. Katz must concede that it did not. Instead, Katz notes that Kelly raised the same infringement opinion in a declaration in support of Katz's opposition to DHL's first summary judgment motion submitted in 2008. But that is irrelevant – it only shows that Katz violated the same rule twice. In DHL's Reply brief in 2008, DHL noted that Katz's theory was new and inadmissible:

> Further, the evidence [Katz] relies upon to support its self-serving description is new expert testimony that was not in Dr. Kelly's expert report. *See, e.g.*, [JA61861] ¶132.

(JA42793.)

Secondly, Katz states that it identified the same structure for the "means for processing" in Kelly's expert report as in his stricken argument. (Katz Br. at 38-39.) However, whether the same structure is identified or not is irrelevant to how that structure meets the functional limitation of the claim – which is the part of Katz's argument that the court struck.

28

Finally, Katz argues that "virtually all of the evidentiary support cited by Dr. Kelly in his summary judgment declarations was also included in his 2008 expert report." Katz seems to suggest that merely citing to some of the same evidence when propounding one infringement theory should be treated as having disclosed a separate, undisclosed, and hidden infringement theory. However, as Katz has argued:

> Rule 26(a)(2) provides that an expert "report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them…" Fed. R. Civ. P. 26(a)(2)."

(JA73402.)

Katz was precluded from relying upon untimely new opinions and contentions unless Katz showed that its failure was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Katz fails to provide any argument about why the district court's ruling should be overturned. Katz does not claim that its failure was "substantially justified" or "harmless." Indeed, Katz fails to even cite the standard. Katz cannot carry its burden, and the district court was correct in striking all of these untimely new opinions and contentions, as well as the portions of Katz's summary judgment papers relying on them.

### 4. Even If The "Look Up" Were Not Stricken, The Accused Systems Do Not Infringe Because Searching Is Not Processing.

Katz argues that the "processing means" limitation is satisfied when █

████████████████████████████████████████████ Searching data

does not "manipulate" data because data is unaltered by the act of reading.

(JA70204-5 ¶¶143, 146-149.)  Neither the Brite IVR system nor the Edify IVR

system provided for the capability of "processing" of data.

Katz's argument in the district court was that because agents look up data

that a caller would enter in the IVR, "that data was necessarily processed."

(JA75703.)  However, the plain meaning of processing requires the manipulation

of data.  Katz provided no evidence that merely looking up data involved

manipulating data, as required by claim 61.

### D. The District Court Correctly Granted DHL Summary Judgment of Non-Infringement of Claim 98 of the '863 Patent.

The Court should affirm the district court's summary judgment of non-

infringement of claim '863:98 because Katz failed to produce any evidence that

DHL's accused systems receive DNIS, as required by the claim.  The district court

followed this Court's instructions in addressing the DNIS limitation on remand.

Katz's claim construction arguments are merely belated challenges to this Court's

ruling in *Katz I*, rather than to the district court's ruling.  Under the proper

construction of DNIS, the record supports the district court's grant of summary

judgment of non-infringement.  Alternatively, this Court may affirm the district

court's ruling on the basis that Katz failed to identify any evidence that the accused

systems satisfy the "caller customer number data" limitation of claim '863:98.

*See, e.g.*, *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 792 (Fed.

Cir. 1990) (judgment may be affirmed on any ground fairly supported by the

record).

> **1.    The District Court Did Not Commit Error By Following This Court's Mandate With Respect To The Construction of DNIS.**

The district court followed this Court's explicit instructions in clarifying the

construction of DNIS on remand.  When this dispute was first before the Court, the

parties agreed about the construction of DNIS, but not the proper application of

that construction.  *See Katz I*, 639 F.3d at 1325 ("the parties do not disagree with

the court's construction of the term DNIS").  The Court remanded to the district

court for the very narrow purpose of clarifying the construction:

> The district court's brief discussion of the DNIS issue
> leaves it unclear whether the court's construction of the
> DNIS limitation requires that the accused system use the
> full ten-digit called telephone number or merely some
> other representation that uniquely identifies the called
> number.  Because the parties have addressed this issue
> only fleetingly in their briefs, we vacate the court's
> summary judgment order as to these claims and remand
> for the district court to resolve this issue of claim
> construction.

*Id.* at 1326.  On remand, the district court was directed to clarify which of two alternative interpretations it intended – either DNIS requires "the full ten-digit called telephone number," or it requires "some other representation that uniquely identifies the called number."  *See id.*  Between the two options presented, the district court chose the second, broader option more favorable to Katz.

The construction Katz now urges – a definition of DNIS that does not include either of the options presented by the Court in *Katz I* – was not on the table.  As the district court noted in the Supplemental Claim Construction Order, Katz's new proposed construction was "inconsistent with both the Federal Circuit's decision and [the district court's] prior rulings."  (JA33.8.)  In clarifying its construction of DNIS, the district court referred back to this Court's ruling in *Katz I*, as well as two of the district court's prior rulings.  (*See id.* (citing JA65381; JA65420).)

The time for Katz to argue for an entirely different construction of DNIS has passed.  Although Katz presents the issue as a challenge to the district court's Supplemental Claim Construction Order, Katz is really arguing that this Court erred in *Katz I*.  (*See, e.g.,* JA33.8 ("Katz, however, is suggesting that both Federal Circuit choices are wrong").)  In its first appeal, Katz challenged the district court's construction of several terms, but did not ask this Court to vacate the district court's construction of DNIS.  (*See* JA64847-49 (identifying claim construction

32

issues on appeal).) Rather, Katz accepted the court's construction of DNIS and argued only that the court had applied it incorrectly. (*See* JA64929.) *See also Katz I*, 639 F.3d at 1325. When this Court set forth two possible clarifications of DNIS for the district court, Katz did not petition for rehearing or rehearing en banc. Having failed to preserve the issue by seeking rehearing under Federal Rule of Appellate Procedure 40, Katz cannot now complain that that the *Katz I* ruling regarding DNIS was error. *See, e.g.*, *United States v. Gargotto*, 510 F.2d 409, 412 (6th Cir. 1974) (in the absence of a petition under Rule 40, issues raised in a prior appeal cannot be reconsidered in a subsequent appeal); *see also Campbell v. United States*, 592 F.2d 309 (6th Cir. 1979) (party may not ignore Rule 40 and then ask the district court to ignore or alter the decision on remand); *Coleman v. Calderon*, 210 F.3d 1047, 1052 (9th Cir. 2000) (law of the case precludes reconsideration of issues decided in prior appeal).

On remand, the district court was not called upon to, and was not free to, abandon its prior construction and construe DNIS from scratch. Nor could the district court consider constructions that Katz had previously failed to advance. Because the district court followed this Court's mandate in *Katz I*, the Supplemental Claim Construction Order and the summary judgment order that flows from it should both be affirmed.

33

2.    **The Claim Requires A One-To-One Correspondence Between The Dialed Number And The Item Accused Of Satisfying The DNIS Limitation.**

Under the district court's construction of DNIS, there must be a one-to-one correspondence between the dialed number and the item accused of being DNIS. Absent such a correspondence, the term "uniquely" in the court's clarified construction would have no meaning. If a VDN from one of DHL's accused systems corresponds to multiple dialed numbers, it does not uniquely identify the called number. Similarly, if a single dialed number corresponds to multiple VDNs, none of those VDNs can uniquely identify that particular dialed number. This requirement is supported by Katz's own statements to this Court, the Court's ruling in *Katz I*, and the language of the patents.

Katz's own arguments in its first appeal support the requirement that there be a one-to-one correspondence between the dialed number and the VDN accused of being DNIS. The specific infringement issue before the Court at that time was whether defendant U.S. Bank's five-digit VDNs satisfied the DNIS limitation, or whether DNIS was only satisfied by the full ten-digit number. *Katz I*, 639 F.3d at 1326. Katz argued that DNIS is satisfied as long as the accused systems assign a "distinct" value to each called number, which can be used to identify the called number and route incoming calls accordingly. *Id.* at 1325-26; JA64925 (asserting

34

that "each toll-free number has a distinct DNIS value associated with it"); JA64928 ("only one called number could be associated with a particular VDN").

The Court's decision in *Katz I* also suggests a one-to-one correspondence. In discussing the district court's construction of DNIS, the Court said that it left "unclear whether the court's construction of the DNIS limitation requires that the accused system use the full ten-digit called telephone number or merely some other representation that uniquely identifies the called number." *Katz I*, 639 F.3d at 1326. Implicit in the Court's language is that *both* interpretations of DNIS would have a one-to-one correspondence between the accused number and the dialed number. The "full ten-digit called telephone number" has a one-to-one correspondence with the dialed number, by definition, and therefore uniquely identifies the dialed number. In the context of the dispute before the Court, the alternative option – "some other representation that uniquely identifies the called number" – implies a one-to-one correspondence as well. The Court was referring to something functionally similar to a full ten-digit number, but not the exact number dialed (*i.e.,* U.S. Bank's five-digit VDNs).

Katz urged the district court to disregard this Court's prior holding as dicta, arguing that this Court's intent was "unclear." (JA6569.) Katz makes the same argument here, asking the Court to ignore its prior ruling. (Katz Br. at 42-43.) But

the Court's ruling on infringement after its discussion of the construction of DNIS

illustrates what the Court intended by "uniquely identifies":

> The accused systems use only five digits, which are
> sometimes referred to as vector directory numbers
> ("VDNs"). U.S. Bank's expert, Dr. Paul S. Min, stated
> that one VDN can correspond to many called numbers in
> the accused system and thus does not uniquely identify
> the number called. If Dr. Min's statement had been
> undisputed, summary judgment of noninfringement
> would have been proper.

*Katz I*, 639 F.3d at 1326. Thus, even under a broad interpretation of DNIS that did

not require the use of the full ten-digit number, this Court held that a system does

not infringe if one VDN can correspond to many called numbers. *Id.*[6]

Finally, contrary to Katz's assertion (*see* Katz Br. at 41-42), language in the

patents supports the one-to-one correspondence requirement. Claims in each of the

asserted patents, including claim '863:96, from which claim 98 depends, describe

using DNIS to identify a *single dialed number*. (*See, e.g.* claim '863:21 (JA482

("identify one of a plurality of different called numbers.")); claim '863:27 (JA483

("identify a select one of a plurality of different called numbers")); claim '863:93

(JA486 ("identify one from a plurality of called numbers")); claim '863:96 (*id.*

---

[6] The Court only reversed the summary judgment in U.S. Bank's favor because
there was a factual dispute over whether U.S. Bank's five-digit VDNs could
uniquely identify the called number, including documents showing a one-to-one
relationship between the assigned DNIS values and the numbers dialed by callers.
*See Katz I*, 639 F.3d at 1326. As set forth in Section VII.D.4, *infra*, there are no
material facts in dispute here.

("said called number is one of a plurality of called numbers")); *see also* claim
'551:18 (JA515); claim '120:28 (JA590).)  These descriptions make sense, because
the purpose of this limitation was to use the specific number dialed to determine
the voice interface the caller would hear.  (*See, e.g.*, JA473 col. 6:31-44; JA475
col. 10:29-41.).  In a system where there is not a one-to-one correspondence, it is
not possible to identify a *single* dialed number because a VDN may correspond to
multiple dialed numbers.  The district court's construction was correct.

### 3.    The District Court Correctly Decided Infringement By Considering Each Accused System As A Whole.

The district court considered whether Katz had provided any evidence of
infringement by considering whether there was a one-to-one correspondence
between the dialed number and the VDN in each accused system, taken as a whole.
(JA11-12.)  Katz argues that, in doing so, the district court improperly disregarded
evidence showing single instances of a one-to-one correspondence between a
particular dialed number and a particular VDN, and granted summary judgment
because the accused systems are "capable of a non-infringing use."  (Katz Br. at
50.)  This dramatically distorts the district court's analysis and makes no sense.

Considering an accused system as a whole is the only rational way to
determine whether the DNIS limitation is satisfied under the proper construction of
that limitation.  If a court were to consider a single VDN in isolation, it would be
impossible to determine whether that VDN *uniquely* identified a called number

because there would be no way of determining whether there were other VDNs that also mapped to the same dialed number.  Similarly, if a court looked at a single dialed number in isolation, even if it corresponded to a single VDN, there would be no way of determining whether other dialed numbers also corresponded to that VDN.  It is only possible to determine whether there is a one-to-one correspondence between VDN and dialed number – and therefore, whether the DNIS limitation of the claim is satisfied – by considering all of the dialed numbers and all of the VDNs in the system as a whole.  This is precisely what the district court did:

> To determine whether VDNs "uniquely identify" a called number, the Court must examine how VDNs operated in the DHL system as a whole.  Under that analysis, it is clear that the VDNs did not uniquely identify the accused numbers.

(JA11-12.)[7]

In Katz's first appeal, this Court considered the question of infringement at the system level.  As noted above, U.S. Bank presented evidence that in its accused system, a single VDN could correspond to multiple dialed numbers – that is, there

---

[7] Although Katz attempts to tie the question of infringement by a system-as-a-whole to its claim construction arguments, the issues are distinct.  The district court conducted its infringement analysis at the system level for other defendants before it added "uniquely" to the construction of DNIS on remand.  (*See* JA65380-81; JA65420.)  Moreover, as discussed herein, this Court considered infringement by the accused U.S. Bank system in *Katz I*, despite the purported ambiguity in the construction of DNIS.  *See* 639 F.3d at 1326.

was not a one-to-one correspondence between the VDNs and dialed numbers in the system as a whole. *Katz I*, 639 F.3d at 1326. The Court held if the facts were not in dispute, such a showing would be sufficient to establish non-infringement, even under the broader construction of DNIS that Katz advocated. *See id.* As discussed by the Court, both parties' proposed interpretations of DNIS considered the system as a whole. *See id.* at 1325 ("Katz argues that the DNIS limitation . . . is satisfied as long as the accused system assigns a distinct value to each called number;" "U.S. Bank seems to argue that . . . the DNIS limitation requires that the accused system actually store the ten-digit telephone number dialed").

Katz's assertion that the district court "discounted" or "ignored" relevant evidence showing how the Brite IVR system operated is incorrect. (*See* Katz Br. at 44, 53.) The evidence the district court cited in describing the operation of the Brite IVR system with regards to the DNIS limitations came straight from the declaration of Katz's expert, Dr. Kelly. (JA11-12 (citing JA75633-36 ¶¶ 78, 81, 83, 87)). This is the same evidence Katz cited in support of its argument that the VDNs received by the Brite IVR system uniquely identified the number that was initially called. (JA75705 (citing JA75633-36¶¶ 78-87).) The district court did not ignore this evidence. Rather, the court relied on the evidence to support its conclusion that in the Brite IVR system, viewed as a whole, the VDNs did not

uniquely identify the called numbers, and Brite therefore did not infringe.  (JA11-12.)

Nor did the district court grant summary judgment on the basis that the Brite IVR system was "capable of a non-infringing use."  The district court never considered the question of whether the accused system was capable of infringing.  Katz argues that, even under the district court's construction of DNIS, the district court's non-infringement analysis was flawed because "[a]ll that is required by the claim language is that the accused systems have the claimed structure that is capable of receiving DNIS."  (Katz Br. at 50.)[8]  Neither of the cases Katz cites in support of its position is on point.  The first, *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed. Cir. 1990), had nothing to do with whether or not an accused device is "capable of infringement."  In that case, the accused infringer argued that the asserted patent claim was invalid over prior art because there were no "operational differences" between the claimed apparatus and the reference, even though there were differences between the two.  *See id.* at 1468.  The court rejected this argument, because "[a]n invention need not *operate* differently than the prior

---

[8] Notwithstanding Katz's suggestion that the district court's infringement analysis was incorrect even if the claim construction was proper (*see* Katz Br. at 49-50), Katz's argument ignores the very construction at issue, under which infringement requires a one-to-one correspondence between the called number and any item accused of satisfying the DNIS limitation.  (*See, e.g.*, JA33.7-8; JA12; JA260-61; JA65420; JA65342-43, JA65380-81.)

art to be patentable, but need only *be* different." *Id.* Katz also cites

*Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, 520 F.3 1367 (Fed.

Cir. 2008), in support of its argument that summary judgment was improper

because Brite was capable of receiving DNIS. (Katz Br. at 50.) In *Microprocessor*

*Enhancement*, the court ruled that the disputed means-plus-function claim was

drawn only to an apparatus capable of performing a function, rather than to both

the apparatus and a method of use in violation of 35 U.S.C. § 112 ¶ 6. 520 F.3d at

1375. Katz fails to explain how the district court's system-level infringement

analysis runs afoul of the holding in *Microprocessor Enhancement*.

Katz appears to be arguing that, under the district court's construction, the

Brite IVR system infringed because it *could* receive DNIS. But this is not a case

involving a question of part-time infringement. It is not as though DHL had a

system capable of practicing a claimed invention, but that only practiced the

invention when and if a customer did something, such as pressing a button, and the

parties dispute whether the customer actually pressed the button. *See, e.g.*, *Ball*

*Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 994-95

(Fed. Cir. 2009) (reversing summary judgment of infringement where district court

found infringement because the accused devices were "reasonably capable" of

being operated in the claimed configuration, but there was no evidence that they

were ever operated as such). The accused DHL systems were designed to have

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████ (*See, e.g.,*

JA67865-66 at 76:2-78:6; JA75667-68 ¶¶ 220-226; JA75636 ¶ 87; JA75652 ¶ 145;

*see also infra* Section VII.E.2.)  Contrary to Katz's position, the district court did

not grant summary judgment of non-infringement because DHL's accused systems

were capable of non-infringing uses; rather, the court granted summary judgment

because Katz failed to provide evidence that the accused systems ever practiced the

claims.

It is immaterial that Katz has identified certain instances where a single

VDN corresponded to a single dialed number.  The asserted claims require more

than that.  Where, as here, a claim requires that a condition is satisfied in all

instances, non-infringement may be established by showing that the accused

product or process only occasionally met the condition.  *See, e.g., LG Elecs., Inc. v.*

*Bizcom Elecs., Inc.*, 453 F.3d 1364, 1380 (Fed. Cir. 2006) (affirming non-

infringement judgment where reading and writing information units in an

information processing system required that each read request be compared with a

buffered write request, and the accused device operated in that manner

occasionally but not all of the time), *rev'd on other grounds sub nom, Quanta*

*Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008); *Ferguson*

Confidential Material Redacted

*Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Systems, LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (affirming judgment of non-infringement where claim required adjusting a time interval in the operation of a petroleum well and the accused device did not always make an adjustment).

The district court correctly focused its infringement analysis on the accused systems, as a whole, in order to determine whether the DNIS limitation was satisfied.

### 4. Katz Failed To Come Forward With Any Evidence That The Brite IVR System Received DNIS.

The district court's summary judgment ruling was proper because Katz did not identify any evidence that the accused Brite IVR system received DNIS. At the core of the district court's ruling was its conclusion that when the accused system is viewed as a whole, "it is clear that the VDNs did not uniquely identify the accused numbers." (JA12.) The material facts were not actually in dispute. Katz concedes several times in its brief that, **in the accused system as a whole**, there was not a one-to-one correspondence between the dialed number and the VDN:

- "the court improperly discounted evidence showing that DHL's system *occasionally has* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮" (Katz Br. at 44 (emphasis added));



- "The district court also improperly ignored the evidence that shows ▮

  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

  (*Id.* at 44 n.5 (emphasis added));

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

  ▮▮▮▮▮ (*Id.* at 48 (emphasis added));

- "For the rare instances of ▮▮▮▮▮▮▮▮▮▮▮

  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* (emphasis

  added));

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

  ▮▮▮▮▮▮▮▮▮ (*Id.* at 49 (citing JA75636 ¶ 87;

  JA70922-31; JA70939-40 at 43:20-44:1) (emphasis added)).

Each of the foregoing statements from Katz admits that in at least some instances,

there were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is therefore

undisputed that in the accused system as a whole, there was not a one-to-one

relationship between the dialed number and the VDNs asserted to satisfy the DNIS

limitation. The district court's grant of summary judgment was proper.

   The portions of the record to which Katz cites in its discussion of disputed

facts only serve to bolster this point. For example, Katz cites to the declaration of

its expert, Dr. Kelly, and to the materials on which Kelly relied, in nearly every

portion of its discussion of DNIS.[9]  (*See, e.g.* Katz Br. at 44 (citing JA75632-36 ¶¶ 75-87), 45 (citing JA75633 ¶ 78), 45 (citing JA75633-34 ¶ 81), 46 (citing 75632-36 ¶¶ 75-87), 47 (citing JA75634-35 ¶¶ 82-83); 47-48 (citing JA75635-36 ¶¶ 85, 87), 48 (citing JA75636 ¶ 87), 49 (citing JA75636 ¶ 87), 54 (citing JA75645-48 ¶¶ 126-133, JA75649-52 ¶¶ 138-147)).)  But Kelly repeatedly admits that there was not a one-to-one correspondence between the dialed number and the VDN system-wide:

- "Some of the called numbers identified in [JA70922-31] correspond to " (JA75636 ¶ 87 (emphasis added); *see also* JA75652 ¶ 145);

- "While occasionally . . ." (*Id.* (emphasis added); *see also* JA75652 ¶ 145).

---

[9] As discussed above, *supra* n.3, Katz's brief includes bulk citations to Kelly's report followed by citation to the materials on which he relied, with no further analysis.  For example, on page 46 of the brief, Katz includes a nearly full-page cite to the record.  The first cited item, JA75632-36 ¶¶ 75-87 is Kelly's discussion of DNIS, on which the district court relied.  (*See* JA11-12 (citing JA75636 ¶ 87).)) Katz includes a citation to JA71171-227,                                    , with no discussion either in its brief or in the cited paragraph of Kelly's report explaining its relevance or how it establishes a disputed fact regarding the DNIS limitation. This is insufficient to satisfy Katz's burden on appeal.

The very portions of Kelly's report to which Katz cites to demonstrate a dispute actually illustrate that no such dispute exists.  In granting summary judgment, the district court cited to the same portions of Kelly's DNIS analysis in support of the conclusion that there was not a one-to-one correspondence between the dialed number and the VDN throughout the accused DHL systems.  (*See* JA11-12 (citing JA75636 ¶ 87.))  Katz has failed to establish any material factual dispute warranting reversal.

> **5.    In The Alternative, The Court May Affirm The Judgment Because The Accused Systems Did Not Satisfy The "Caller Customer Number Data" Limitation Of Claim '863:98.**

If the Court concludes that the accused systems satisfied the DNIS limitation, it may still affirm the judgment of non-infringement because Katz failed to come forward with evidence that the accused systems satisfy the "caller customer number data" limitation of claim '863:98.  Katz relied on the use of a caller's telephone number in the accused systems to satisfy this limitation, but a caller's telephone number is not "caller customer number data" for claim 98 of the '863 patent.  The district court should have granted DHL summary judgment of non-infringement on this basis.  The district court stated that "just because a telephone number constitutes 'personal identification data' does not mean that the telephone number cannot also be a caller customer number."  (JA17.)  However,

the district court's claim construction and the text of the claims themselves establish that a caller telephone number cannot be a caller customer number.

Claim 98 adds the additional element to claim 96 that "said identification data signals comprise caller customer number data." (JA486 at 32:32-34.) The district court interpreted "customer number data" to mean "a number assigned to a customer by a vendor or merchant or recognized by a vendor or merchant for the purpose of identification of the customer. The customer number is distinct from a credit card number." (JA84.) Dr. Kelly and Mr. Zatkovich both accepted this claim construction. (JA67610; JA70223 ¶207.)

> **a.** **The District Court Ignored Its Own Claim Construction Distinguishing "Personal Identification Data" From "Caller Customer Number Data."**

The district court ruled, in connection with claim 43 of the '863 patent, that "personal identification data" means "data that is personal or specific to a caller that permanently identifies the caller to the world at large and is distinct from caller customer number data, a password, and PIN numbers. Examples of personal identification data may include a name, address, telephone number or initials." (JA68.) Because personal identification data is distinct from caller customer number data, and personal identification data may include a telephone number, logically a telephone number may not be customer number data.

Furthermore the claims of the '863 patent distinguish "customer number data" from a "caller telephone number data." Claim 98 limits "identification data signals" of claim 96 to comprise "caller customer number data." Claim 99, on the other hand, limits the "additional identification data signals" of claim 96 to comprise "at least one of caller PIN number data, caller initials data, social security number data, or caller telephone number data." (JA486.) Therefore, while "caller telephone number data" of claim 99 and "caller customer number data" of claim 98 are both "identification data signals" of claim 96, the '863 patent clearly treats them as different kinds of identification data signals.

In the claim construction briefing for the construction of "caller customer number data" Katz attempted to argue that credit card numbers should be considered "customer number data." Katz argued that there are many types of information that can be used to identify customers:

> The plaintiff also points out that the specifications show that customers "may be identified by various forms of identifications such as, for example, credit card numbers, social security numbers, drivers license numbers, telephone numbers, or other identifying numbers." (Plaintiff's Opening at p. 12.).

(JA83.)

The district court responded:

> Although these examples demonstrate that the patents identify customers in different ways, the term "customer number" is not used to generally refer to these various

> types of identifications. Instead, "customer number" is
> used to refer to one of those forms of identification.
> Underscoring that point, the patentee has also chosen to
> use both "customer number" and "credit card number" in
> the same claims. In the absence of any evidence to the
> contrary, we presume that the use of different terms in
> the same claims connotes different meanings. *See,
> Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
> 448 F.3d 1324, 1333 fn. 3 (Fed. Cir. 2006).

(JA83-84.)

Like the difference between "credit card number" and "customer number",

Katz's use of the term "caller telephone number data" in claim 99 to indicate

another type of "identification data signal" shows that "caller telephone number

data" and "caller customer number data" are two different kinds of data. Katz

chose to assert claim 98 against DHL. Katz did not choose to assert claim 96

against DHL. Claim 98 limits the "identification data signals" of claim 96 to be

"caller customer number data" – not to "caller telephone number data" or any other

kind of "identification data signals." Claim 98 limits "identification data signals"

to one specific kind of identification data signal – "customer number data". Katz is

now trying to use DHL's use of "caller telephone number data" to prove

infringement for a limitation that specifically requires "caller customer number

data." This is improper and should not be permitted.

*Confidential Material Redacted*

> **b.** **Katz Did Not Come Forward With Evidence That The Accused Systems Satisfy The Caller Customer Number Data Limitation.**

The district court denied DHL's motion for summary judgment with respect to this limitation because "Katz presented evidence that the accused Brite IVR system used a caller's number for the purpose of identifying the caller." (JA17.) This ruling was premised upon the fact that the district court ignored the construction of "caller customer number data," as addressed above, and should be reversed on that basis alone.

However, even if "caller customer number data" can include a caller's telephone number, the evidence relied upon by Katz's expert, Dr. Kelly, to demonstrate that the accused system uses caller customer number data is inadequate to sustain Katz's burden. First, Dr. Kelly contended that the telephone number entered by certain callers who use the Brite IVR system to schedule a pickup constituted "customer number data" within the meaning of '863:98. (JA67785-6.) However, there is no evidence indicating that ██████████ ██████████████████████████████████████████████ █████████████████████████████████ (JA70224 ¶211.)

Kelly also cited certain materials that make reference to the use of ANI in the Brite IVR system. (JA67785-6.) However, regardless of whether ANI is caller

*Confidential Material Redacted*

customer number data, it is not "entered by a caller" as expressly required by the language of the claim.

Finally, Kelly also cited certain materials that describe the entry of data other than a phone number by a caller scheduling a pickup in the Brite IVR system, including the caller's extension, floor number, and close time. *Id.* To the extent Kelly intended to suggest that these numbers constituted "customer number data" within the meaning of '863:98, this is incorrect for the same reasons discussed above in connection with the caller's telephone number. These were simply numbers in a customer's file that were used to assist with scheduling a pickup. There is no evidence indicating that ████████████████████████████████ ████████████████████████. Indeed, unlike the caller's telephone number, there is no evidence that ████████████████████████████████████ ████████████████████████████.

Because Katz did not come forward with sufficient evidence of infringement, DHL was entitled to summary judgment of non-infringement of claim '863:98 based on caller customer number data.

### E. The Court Correctly Granted Summary Judgment Of Non-Infringement For Claim 19 Of The '551 Patent.

For the reasons stated above in Section VII.D, discussing claim '863:98, the district court correctly granted summary judgment of non-infringement of claim '551:19 because Katz has not satisfied its burden of coming forward with evidence

of infringement. (JA18-19.) The accused Brite and Edify IVR systems did not receive DNIS and therefore did not infringe. In addition to repeating its DNIS arguments, Katz also argues that the district court's non-infringement ruling regarding the Edify IVR system was error because it went beyond the scope of DHL's summary judgment motion, and because DHL purportedly conceded that the Edify IVR system received DNIS. (Katz Br. at 55.) Katz is wrong in each instance, and has failed to provide the Court with any basis for reversal.

### 1. DHL Moved For Summary Judgment Of Non-Infringement Of Claim '551:19 By The Edify IVR System.

The record establishes that DHL requested summary judgment of non-infringement of claim '551:19 as to the Edify IVR system. In its moving papers, DHL argued that neither the Brite IVR system nor the Edify IVR system received DNIS. (JA70626 ("The *accused systems* did not receive DNIS, but instead used vector directory numbers (VDN)" (emphasis added)).) In its reply brief, DHL argued that the accused systems did not infringe any claim that requires DNIS – which would include claim '551:19 – because "[t]he VDN signals DHL receives do not have a one-to-one correspondence with the called number." (JA78512.) DHL's expert, Mr. Zatkovich, also stated in a declaration in support of DHL's motion that the Edify IVR system received a "virtual DNIS" that did not directly correspond to the original DNIS. (JA70185-86 ¶¶ 68, 78.)

Katz's own papers before the district court indicate that Katz understood DHL was seeking summary judgment with respect to the Edify IVR system. In its opposition to DHL's motion, Katz argued that the Edify IVR system infringed claim '551:19 because it received DNIS. (JA75711.) Katz also relied on a declaration from its expert, Dr. Kelly, addressing the use of DNIS in the Edify IVR system. (JA75667-68 ¶¶ 220-226.)

The precise wording of DHL's motion was not a limit on the district court's authority to grant summary judgment. Rather, the district court may grant summary judgment *sua sponte* in the absence of a formal motion. *See, e.g.*, *Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985). The only requirement is that the party against whom summary judgment was entered had a full and fair opportunity to develop and present facts and legal arguments in support of its position. *Id.* Katz knew that its allegations of infringement against the Edify IVR system were at issue, and presented facts and legal arguments purportedly supporting its position. The district court therefore had the authority to enter summary judgment of non-infringement of claim '551:19 by the Edify IVR system.

> **2.** **Katz Has Not Come Forward With Any Evidence That The Edify IVR System Infringed Claim '551:19.**

The Edify IVR system did not receive DNIS and therefore did not infringe claim '551:19. Katz has not come forward with any evidence to the contrary, and

has not demonstrated that there was a triable issue of fact. Because Katz failed to satisfy its burden, the district court's summary judgment ruling should be affirmed.

There was no dispute about whether the Edify IVR system received DNIS, as construed by the district court. First, the "admission" on which Katz relies in its brief is taken out of context. (Katz Br. at 55). Review of the surrounding discussion in DHL's moving papers and the Zatkovich Declaration shows that, rather than admitting Dr. Kelly's assertion about the Edify IVR system receiving DNIS, DHL was explaining why the testimony on which Kelly relied did not support Katz's infringement case. (*See* JA70626.) Specifically, Zatkovich pointed out that the witness on whom Kelly relied used "DNIS" in a manner different from the court's construction. (JA70207 ¶ 158.)

Moreover, there was undisputed evidence before the district court that the Edify IVR system received "virtual DNIS" from the ACD that did not correspond directly with original DNIS, and that could not be used to identify the number dialed. This is because there were ███████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

(JA67865-66 at 76:2-78:6 ███████████████████████████

████████████████████████████████████████████████

JA67866-67 at 81:11-82:2 

.)  Katz's expert discussed this in detail in

his declaration, providing several specific examples where

(JA75667-68 ¶¶ 220-

226.)  For example, Kelly explains that

(JA75668 ¶ 223 (citing JA72284).)  If a

caller dialed

(*See* JA75668 ¶¶ 224-225; *see also* JA67865-66 at 76:2-78:6.)  DHL's expert, Mr.

Zatkovich, also described how

(JA70185-86 ¶¶ 68, 78.)  Mr. Zatkovich further explained that

(JA70187 ¶ 85; JA70207 ¶ 158.)

Because the evidence before the district court, submitted by *both parties*,

illustrated that there were a plurality of dialed numbers associated with the virtual

DNIS used in the Edify IVR system, there were no material facts in dispute, and

the district court's grant of summary judgment of non-infringement of claim '551:19 by the Edify IVR system was proper.

## VIII. <u>DHL'S CROSS-APPEAL ARGUMENTS</u>

If this Court affirms the district court's judgment in favor of DHL on all asserted claims, there is no need to consider DHL's cross-appeal. However, if the Court reverses the grant of summary judgment as to any of claims '863:98, '551:19, or '285:61, DHL respectfully requests that the Court (a) reverse the district court's denial of summary judgment that Katz is collaterally estopped from asserting claim '285:61; and (b) vacate the district court's construction of "processing" in the means-plus-function elements of the asserted claims.

### A. <u>The District Court Should Have Granted DHL Summary Judgment That Collateral Estoppel Precludes Katz From Asserting Claim '285:61.</u>

If the Court reverses the district court's grant of summary judgment of non-infringement of claim '285:61, DHL respectfully requests that the Court also reverse the district court's denial of summary judgment regarding collateral estoppel with respect to the same claim.[10] Claim 61 of the '285 patent depends

---

[10] Although the outcome would be the same in terms of DHL's liability if the Court affirms the non-infringement ruling or reverses the collateral estoppel ruling, the latter would modify or enlarge the judgment DHL obtained before the district court. DHL's argument that Katz is collaterally estopped from asserting the validity of claim '285:61 must therefore be presented in DHL's cross-appeal rather than as an alternative ground for affirmance. *See, e.g., Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 731 F.3d 840, 843-44 (Fed. Cir. 1984).

from claim 54. (JA429.) Claim 54 was rejected by the PTO as obvious, and that rejection was affirmed by both the Board and this Court. (*See* JA69089-0069102; JA69131-32, JA69139; *In re Ronald A. Katz Technology Licensing, L.P.*, No. 2013-1137 (Fed. Cir. Nov. 7, 2013).)

The final rejection of claim 54 of the '285 patent, affirmed by this Court, is binding on Katz in this litigation based on collateral estoppel. Once the claims of a patent are held invalid in one proceeding, collateral estoppel bars the patentee from maintaining suit based on the invalid claims. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971); *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994) (once a patent claim has been invalidated "after full and fair litigation, [the plaintiff] is collaterally estopped from recovering for infringement of [that claim] in these pending cases."). This Court applies the law of the regional circuit to the issue of collateral estoppel. *Novartis Pharmaceuticals Corp. v. Abbott Laboratories*, 375 F.3d 1328, 1333 (Fed. Cir. 2004). Under Ninth Circuit law, collateral estoppel is appropriate where: (1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003).

Here, each of the elements of collateral estoppel is met. There is no question that the issue before the PTO, and subsequently before this Court in the 1137 Appeal, is identical to the first portion of DHL's collateral estoppel argument regarding claim 61: whether claim 54 is invalid as obvious. Similarly, there can be no dispute that the obviousness of claim 54 was "actually litigated," "necessary to support the court's judgment in the first action," and not "merely incidental to the judgment in the prior action." *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999). The obviousness of claim 54 was the sole issue before this Court in the 1137 Appeal.

Before the district court, the only argument Katz presented against the application of collateral estoppel was that it had petitioned for rehearing before the Board, so the rejection was not yet final. (JA75697.) The Court has since affirmed the Board's decision on appeal. *In re Ronald A. Katz Technology Licensing, L.P.*, No. 2013-1137 (Fed. Cir. Nov. 7, 2013). As with claim 34 of the '120 patent, *see* Section VII.B *supra*, the time for Katz to file a petition for rehearing en banc lapsed, and the Court issued its formal mandate on December 30, 2013. The rejection of claim 54 is now final, and collateral estoppel applies.

Therefore, on remand, Katz must be precluded from arguing that any element of claim 54 is not disclosed in the prior art, or that there was not a motivation to combine the prior art references.[11]

## B. The District Court Erred in Construing "Processing."

Claims '863:98, '551:19, and '285:61 each contain a means-plus-function "processing" element that must be clearly linked to structure disclosed in the specification. (JA428 at 24:41-44; JA486 at 32:21-23; JA515 at 23:11-14.) Before the first appeal, the district court held that these claims were indefinite because, while each claim recites a computer-implemented "processing" function linked to the disclosed processing unit 92 (or processor P for the '285 patent), the specifications do not disclose algorithms with these functions. (*See* JA185-86 (citing *Aristocrat Techs. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008)); JA257-59 (same).)

---

[11] Claim 61 is drawn to "An interface control system according to claim 54, wherein a plurality of called numbers are associated with said select processing format." (JA429.) In opposing DHL's motion for summary judgment, the only arguments Katz made regarding the validity of claim '285:61 related to the elements of claim '285:54 and the motivation to combine. (*See* JA75697-75700.) Katz did not dispute that the two prior art references at issue, Barger and VCT '86, disclose the additional element of claim 61. (*See* JA69661; JA69665; JA69625 ¶¶ 311-12; JA69685 col. 9:29-33; JA69684 col. 7:15-19; JA69676-77; JA69276 ¶¶ 387-88; JA69283 ¶¶ 431-32.) Therefore, on remand, DHL would be entitled to judgment as a matter of law that claim 61 is invalid as obvious.

In *Katz I*, this Court reversed. The Court remanded to the district court in part to construe "processing" and to determine whether the recited functions require disclosure of algorithms under 35 U.S.C. § 112 ¶ 6:

> Because the parties have not briefed the construction of the term "processing" *as used in the seven claims* referred to above, we leave it to the district court to construe that term, along with the terms "receiving and storing." Based on its construction, the district court can then determine *whether the functions recited in those seven contested claims* can be performed by a general purpose processor, or, instead, constitute specific computer-implemented functions as to which corresponding algorithms must be disclosed.

*Katz I*, 639 F.3d at 1317 (emphasis added). The Court in *Katz I* recognized a narrow and specific exception to the general rule that, under 35 U.S.C. § 112 ¶ 6, algorithms must be disclosed for functions performed by general purpose computers. *Id.* at 1316. As set forth below, the functions of the asserted claims constitute specific computer-implemented functions as to which corresponding algorithms must be disclosed, so the exception is not applicable. Because Katz did not disclose those algorithms, the claims are indefinite.

### 1. "Processing" Should Not Be Construed Alone, In Place Of The Recited Function.

Before the first appeal, Katz acknowledged the function for each asserted means-plus-function claim limitation:

- Katz's expert Dr. Kelly disclosed that the function of the "means for processing" limitation of claim '863:98 was "processing at least certain of said answer data signals relating to certain select ones of said individual callers." (JA67624.)

- Katz agreed that the function for the means-plus-function term "analysis structure" in claim '551:19 was "processing at least certain of the data relating to certain individual callers subject to qualification by the qualification structure." (JA70117; *see also* JA67621.)

- Dr. Kelly disclosed that the function for "means for processing" in claim '285:61 is "processing caller information data entered by an operator at said live operator attended terminal." (JA67651-2.)

On remand, Katz changed its position and claimed that the function for each of these elements is merely "processing," calling them "simple functions," and left out the remainder of its previously-disclosed or agreed upon constructions. (JA 65682-3.)

The district court adopted Katz's new approach and construed "processing" to have its plain meaning in the context of each asserted claim, ignoring the previously established functions identified above, and rejecting DHL's argument that the claims required disclosure of algorithms. (*See* JA33.5.)

The district court's ruling was contrary to law. *See USHIP Intellectual Properties, LLC v. United States*, 98 Fed. Cl. 396, 419-20 (Fed. Cl. 2011) (considering *Katz I* and holding that the recited function was not simply "analyzing" but "analyzing the inputted information and calculating the fee for shipment of the item," as recited in the claim).

## 2.    This Court Has Consistently Held That Similar Claims Require The Disclosure Of An Algorithm.

In *Ergo Licensing LLC v. Carefusion 303, Inc.*, 673 F.3d 1361 (Fed. Cir. 2012), this Court explained that the algorithm disclosure requirement is the "default rule," and the holding in *Katz I* was a "narrow exception to the requirement that an algorithm must be disclosed for a general purpose computer without special programming." *Id.* at 1364-65.  This Court made clear that "it is only in the rare circumstances where any general-purpose computer without any special programming can perform the function that an algorithm need not be disclosed." *Id.* at 1365.

The Court has consistently reached the conclusion that claims similar to those Katz asserts here require the disclosure of an algorithm.  In *Ergo*, for example, the asserted patent described an infusion system used to meter and simultaneously deliver fluids from multiple fluid sources into a patient's body. The parties stipulated that several of the asserted claims contained means-plus-function terms, including a "control means for controlling [an] adjusting means."

*Ergo*, 673 F.3d at 1363.  The parties agreed that the claimed function for the control means was "controlling the adjusting means." *Id.*  Plaintiff Ergo Licensing argued that its disclosure of a "control device" or general purpose computer in the specification of the asserted patent was sufficient, but this Court held that the "control means" was indefinite for failure to disclose corresponding structure in the form of an algorithm.  *Id.* at 1365.  This Court explained that a general purpose computer was insufficient structure since such a computer could not accomplish the function without special programming.

Similarly, in *Encyclopaedia Britannica, Inc. v. Alpine Elecs., Inc.*, 355 F. App'x 389, 393 (Fed. Cir. 2009), this Court held that "means for retrieving said textual information and interrelated graphical information to said searched textual information" required disclosure of an algorithm, rejecting the patentee's argument that a general purpose computer was adequate because functions such as "retrieving data from a database" are well known.  *Id.* at 395.  Because a computer programmed with software was required to carry out the claimed function (*i.e.,* to identify what to retrieve), Section 112 required disclosure of an algorithm.  *Id.*

This Court has previously held that similar claims from Katz's patents require the disclosure of an algorithm:

> Computers can be programmed to conditionally couple calls in many ways.  Without any disclosure as to the way Katz's invention conditionally couples calls, the public is left to guess whether the claims cover only

> coupling based on particular system conditions, such as
> the availability of an operator, or are broad enough to
> cover any coupling in conjunction with an if then
> statement in source code.

*Katz I*, 639 F.3d at 1315.[12]  Thus, this Court determined that an algorithm was

necessary to identify the "condition" for coupling calls and to avoid "the

overbreadth inherent in open-ended functional claims."  *Id.*

### 3. The Function For The "Means For Processing" Limitation In Claim '863:98 Requires Identifying A Different Subgroup Of Callers And Different Sets Of Answer Data Signals.

The processing means for claim 98 of the '863 patent applies only to "select

ones" of the individual callers who must be identified for the processing step.  The

processing means is further limited to processing "at least certain" of the answer

data signals relating to the subgroup of "select ones" of individual callers.  Without

an algorithm explaining how to divide the callers into these different subgroups,

the public is left to guess how "select ones" of the individual callers are selected

from the group of individual callers.  Furthermore, due to the recited relationship

between the "certain of the answer data signals" and the "select ones" of individual

callers, the same algorithm that distinguishes the different subgroups of callers

must identify the difference between the set of "answer data signals" and the set of

---

[12] Claims '551:21 and '551:33 recite "processing means . . . for receiving customer number data entered by a caller . . . and based on a condition coupling an incoming call to the operator terminal."  *Katz I*, 639 F.3d at 1314-15.

"certain of said answer data signals" for processing. Thus, the claimed function requires the computer to use some algorithm to select or filter the callers and answer data signals.

Like the computers discussed in *Katz I*, *Ergo*, and *Encyclopaedia Brittanica*, the computer in claim '863:98 could be programmed to select or filter callers and answer data signals in a variety of ways. For example, the computer could be programmed to select and process answer data for every other caller, the first 200 callers, or only callers calling during a certain time interval. Disclosure of an algorithm is therefore required, and in the absence of an algorithm, the claim is indefinite.

### 4. The Function For The "Analysis Structure" Element Of Claim '551:19 Requires A Determination Of Which Data Is To Be Processed.

The claimed function requires the computer to use some algorithm to select or filter the answer data signals. Claim '551:19 recites an "interface structure" that receives signals from a set of "individual" callers. Then, a "record memory connected to the interface structure," is recited to store data relating to a newly-defined set of "certain individual callers." Then the "analysis structure" that is connected to and accesses that "record memory" is recited to process a further subset of "certain of the data relating to certain individual callers." The specific function recited in '551:19 describes processing a specific subset of data: "certain

of the data relating to certain individual callers." Like '863:96, the computer

performing these functions must be programmed with an algorithm. *Ergo*, 673

F.3d at 1365; *Encyclopaedia Britannica*, 355 F. App'x at 393. In the absence of

that algorithm, the public is left to wonder how the recited system processes

"certain of the data relating to certain individual callers," and what prevents the

"data" and "certain of the data" from being "one and the same." *See Becton,*

*Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir.

2010); *see also Katz I*, 639 F.3d at 1315.

### 5. The Function For The "Means For Processing" In Claim '285:61 Requires An Order In Which Multiple Caller Information Data Entries Are Processed.

The "means for processing" limitation of independent claim '285:54

describes the function as "processing caller information data entered by an operator

at *said live operator attended terminal*" (emphasis added), where the antecedent

usage of "live operator attended terminal" is defined in the preamble as "a plurality

of live operator attended terminals."

"Processor P" must be programmed with an algorithm to identify the order

in which the multiple caller information data entries are to be processed. Courts

have required that even basic algorithms known in the art must be disclosed. *See*

*Aristocrat Techs.*, 521 F.3d. at 1337-38 ("the proper inquiry for purposes of section

112 paragraph 6 analysis is to look at the disclosure of the patent and determine if

one of skill in the art would have understood that disclosure to encompass software to perform the function . . . not simply whether one of skill in the art would have been able to write such a software program"); *Encyclopaedia Britannica,* 355 F. App'x at 393 (requiring disclosure of an algorithm to perform the claim function of "retrieving data from a database," even though well known in the art). The order in which "processor P" processes the caller information data can be achieved in a variety of ways. Without an algorithm to specify the claimed method, the public is left to guess. *Katz I*, 639 F.3d at 1314-15. Therefore, the claimed processing function requires disclosure of an algorithm.

## IX. <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the district court's grant of summary judgment of non-infringement of all asserted claims. Should the Court reverse the non-infringement rulings, DHL respectfully requests that the Court reverse the district court's construction of the term "processing" and the district court's denial of summary judgment as to claim 61 of the '285 patent based on collateral estoppel.

Dated:  January 22, 2013

Respectfully submitted,

*/s/ Christopher S. Ruhland*
Edwin V. Woodsome, Jr.
Christopher S. Ruhland
DECHERT LLP
US Bank Tower
633 West 5th Street
37th Floor
Los Angeles, CA  90071-2013
Telephone:  (213) 808-5700
Facsimile:  (213)808  5760

Stephen R. Dartt
DECHERT LLP
300 West 6th Street
Suite 2010
Austin, TX 78701
Telephone:  (512) 394-3000
Facsimile:  (512) 394-3001

Daniel B. Epstein
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Phone:  (650) 813-4800
Fax:  (650) 813-4848

*Attorneys for Cross-Appellants DHL Express (USA), Inc., and Sky Courier, Inc.*

# United States Court of Appeals
## for the Federal Circuit

*Ronald A. Katz Technology v DHL Express (USA), Inc., 2013-1510, -1543*

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by DECHERT LLP, Attorney for Cross-Appellants to print this document.  I am an employee of Counsel Press.

On **January 22, 2014**, Counsel for Cross-Appellants has authorized me to electronically file the foregoing **Principal and Responsive Brief (Confidential and Non-Confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

FRANK PIETRANTONIO
*Counsel of Record*
JONATHAN G. GRAVES
COOLEY LLP
One Freedom Square
11951 Freedom Drive
Reston, VA 20190-5656
Tel: (703) 456-8000
Fax: (703) 456-8100
fpietrantonio@cooley.com
jgraves@cooley.com

LORI R. MASON
LOWELL D. MEAD
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
(650) 843-5000 (telephone)
(650) 849-7400 (facsimile)
lmason@cooley.com
lmead@cooley.com

SARAH J. GUSKE
COOLEY LLP
380 INTERLOCKEN CRESCENT, SUITE 900
BROOMFIELD, CO 80021-8023
(720) 566-4000 (telephone)
(720) 566-4099 (facsimile)
sguske@cooley.com

The confidential version will be served via email on the above counsel on this date.  Additionally, two paper confidential copies will also be mailed to lead counsel at the address noted above on this date.

Upon acceptance by the Court of the e-filed document, six paper confidential copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

January 22, 2014                                    /s/Elissa Matias
                                                    Counsel Press

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains  15,093  words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

January 22, 2014

_____/s/ *Daniel B. Epstein*_____
Daniel B. Epstein
DECHERT LLP
*Attorneys for Cross-Appellants*
*DHL Express (USA), Inc.,*
*and Sky Courier, Inc.*